```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )
                              )      Cr. No. 03-10220 MEL
         v.                   )
                              )
3. CATHERINE BUCCI, Et al.    )
         Defendant.           )
```

GOVERNMENT'S OPPOSITION TO MOTION FOR BILL OF PARTICULARS

Defendant Catherine Bucci has moved for a bill of particulars. Her basis for making this request is that "the Government's Second Superseding Indictment against her does not provide any fact or detail to support its *naked and vague allegation* that she had the requisite knowledge under the money laundering statute." (Emphasis added). Similarly, she contends that "the government has produced *no evidence* demonstrating that the defendant knew that the documented transactions involved funds obtained by specified criminal acts." (Emphasis added).

This request should be denied because the defendant has already received the information that she seeks in the form of an extremely detailed and specific, 39-page Second Superseding Indictment (the "Indictment") and extensive discovery produced in this action.

"The function of a bill of particulars is to provide the defendant with the necessary details of the charges against him to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." United States v. Abreu,

1

952 F.2d 1458, 1469 (1st Cir.1992). A bill of particulars should be granted only when the indictment is so vague that it does not comply with these purposes. <u>United States v. Bloom</u>, 78 F.R.D. 591, 599 (E.D. Pa. 1977); <u>United States v. Andrus</u>, 775 F.2d 825, 843 (7th Cir. 1985) (bill required only when indictment so general that it fails to advise defendant of the specific acts charged).

The test for a bill of particulars is not whether the particulars sought would be useful to the defense but whether the information is "necessary." <u>United States v. Guerrerio</u>, 670 F. Supp. 1215, 1224 (S.D. N.Y. 1987). A bill is not an appropriate way of obtaining information on evidentiary matters and is not designed to permit defendants to preview the evidence or the government's theory of the case.   <u>See</u> <u>United States v. Johnson</u>, 504 F.2d 622, 628 (7th Cir. 1974); <u>Overton v. United States</u>, 403 F.2d 444, 446 (5th Cir. 1986); <u>Hemphill v. United States</u>, 392 F.2d 45, 49 (8th Cir.); <u>United States v. Wolfson</u>, 413 F.2d 804, 808 (2d Cir. 1969) (identities of persons present at time of offense); <u>United States v. Remy</u>, 658 F. Supp. 661, 669-70 (S.D.N.Y. 1987) (government not under any duty to detail "precise manner in which crimes alleged in the indictment were committed"); <u>United States v. Finley</u>, 705 F. Supp. 1272, 1278 (N.D. Ill. 1988) (government not required to provide defendant with details of the evidence it intends to introduce or the

purposes for which it intends to introduce the evidence).[1]

In this case, the Indictment specifically alleges the dates and places of the alleged crimes as well as the nature of the crimes themselves. It identifies where the crimes took place and the duration of the conspiracy alleged, it describes the manner and means of the conspiracy, the purpose of the conspiracy, and the overt acts committed by the defendant, all of which support the inference of knowledge.

By way of example only, the Indictment alleges the following:

- -- In or about June 1999, **Catherine M. Bucci** opened a nominee bank account at SIS Family Bank in Middleton, Massachusetts (which was subsequently acquired by Banknorth, N.A.) (hereinafter, "SIS Family Bank"), into which large sums of cash proceeds derived from **Sean Bucci**'s drug trafficking activity were deposited, and which was used by **Sean Bucci** to make mortgage and other monthly payments to his creditors.

- -- From on or about June 1, 1998, through on or about December 26, 2002, **Sean Bucci**, **Catherine M. Bucci**, and others acting on their behalf, structured cash transactions with these domestic financial institutions by breaking up $95,700 in cash and converting it into Cashier's, Treasurer's, or personal checks, which were used to acquire real property for the benefit of **Sean Bucci**.

---

[1] Whether to grant a bill of particulars is left to the sound discretion of the district judge, Will v. United States, 389 U.S. 90, 98-99 (1967), whose decision will be reversed only for abuse of discretion. United States v. Paiva, 892 F.2d 148 (1st Cir.1989) (citing Wong Tai v. United States, 273 U.S. 77, 82 (1927)). To establish an abuse of discretion, "a defendant must demonstrate actual surprise at trial or actual prejudice to his substantial rights." Paiva, 892 F.2d at 154.

-- It was a part of the conspiracy that **Sean Bucci** regularly provided cash proceeds from his drug trafficking activity to **Catherine M. Bucci**, who deposited the proceeds into her own bank accounts and used the deposits to purchase Cashier's Checks, which were used to acquire real property for **Sean Bucci** without revealing the illegal nature and source of his income.

-- It was a further part of the conspiracy that **Catherine M. Bucci** made material false statements on loan and refinancing applications involving property located at 23 Marshall Street, North Reading, Massachusetts (the "Marshall Street Property") in order to enable **Sean Bucci** to acquire, purchase, maintain and control the Marshall Street Property and real property located at 10 Alderbrook Drive, Topsfield, Massachusetts (the "Alderbrook Drive Property"), without revealing the illegal source of his income.[2]

-- It was a further part of the conspiracy that **Sean Bucci** provided approximately $60,000 of cash proceeds from the sale of controlled substances to **Catherine Bucci** for deposit into a safe deposit box held by **Catherine Bucci** and **Sean Bucci** in order to assist **Catherine Bucci** to qualify for a mortgage to acquire the Marshall Street Property for the benefit of **Sean Bucci**.

-- It was a further part of the conspiracy that **Sean Bucci** and **Catherine M. Bucci** caused large amounts of cash, derived from **Sean Bucci**'s illegal trafficking of marijuana, to be deposited into accounts held by **Catherine M. Bucci** at multiple domestic financial institutions, and at different branches of the same domestic financial institution.

-- It was a further part of the conspiracy that in or about June 1999, **Catherine M. Bucci** opened a new bank account at SIS Family Bank, into which **Sean Bucci** and **Catherine M. Bucci** caused large sums of cash proceeds from **Sean Bucci**'s marijuana trafficking activity, to be deposited for the benefit of **Sean Bucci** and the payment of **Sean Bucci**'s creditors through the use of pre-

---

[2] The Indictment goes on to delineate the precise nature of the false statements.

4

-- signed, blank checks, which **Catherine M. Bucci** provided to **Sean Bucci**.

-- On or about June 26, 1998, defendant **Catherine M. Bucci** signed a Settlement Statement at the closing for the acquisition of the Marshall Street Property, wherein she provided approximately $58,960.00 in cash and cash equivalents, of which funds approximately $41,420.00 had been previously structured.

-- On various dates between June 10, 1999, and January 6, 2003, **Catherine M. Bucci** and **Sean Bucci** caused at least $118,000.00 to be deposited and $117,998.00 to be withdrawn from **Catherine M. Bucci**'s Account No. 802-0308090 at SIS Family Bank.

-- On or about October 9, 1999, **Catherine M. Bucci** made material false statements on an application for a loan in the amount of $260,000.00 from World Savings and Loan Association, a domestic financial institution, in order to refinance the original mortgage on the Marshall Street Property, for a new loan that provided cash back at closing, in order to facilitate the acquisition of a second piece of property by **Sean Bucci** . . . .[3]

The Indictment continues, for many pages, describing the exact nature of structured transactions by the defendant. For example, the Indictment provides:

-- On or about November 3, 1999, **Sean Bucci** and **Catherine M. Bucci** made the following cash deposits into **Catherine M. Bucci**'s Account No. 8020308090 at SIS Family Bank:

| | **DATE** | **TIME** | **DEPOSIT** | **BRANCH** |
|---|---|---|---|---|
| a. | 11/03/99 | 1:18 p.m. | $9,000.00 | Middleton, MA, Branch, SIS Family Bank |

---

[3] The Indictment goes on to delineate the precise nature of the false statements.

5

    b.    11/03/99    2:10 p.m.    $9,000.00    Peabody, MA, Branch, SIS Family Bank

--  On or about November 3, 1999, **Sean Bucci** and **Catherine M. Bucci** also made the following purchases of Cashier's Checks through **Catherine M. Bucci**'s, Account No. 8020308090 at SIS Family Bank, which were used in **Sean Bucci**'s purchase of the Alderbrook Drive Property:

| | **DATE** | **TIME** | **CASHIER'S CHECK AMOUNT** | **BRANCH** |
|---|---|---|---|---|
| a. | 11/03/99 | 1:18 p.m. | $9,000.00 | Middleton, MA, Branch, SIS Family Bank |
| b. | 11/03/99 | 2:10 p.m. | $9,000.00 | Peabody, MA, Branch, SIS Family Bank |

In addition, the government has provided thousands of pages of bank records and interview reports pursuant to Fed. R. Crim. P. 16(a) and Local Rule 116.1(A) and other additional information that far exceeds what is required.  Because all this has given the defendant even more of the particulars of the alleged offenses, a bill of particulars is not necessary or warranted.  See United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) (government may obviate need for bill of particulars by disclosing additional details about charges during discovery).

The Court need go no further. Simply there is nothing "vague" about the 39-page Indictment in this case. To the contrary, the Indictment is extremely detailed and specific, and clearly "provide[s] the defendant with the necessary details of the charges against [her] to enable [her] to prepare [her] defense, to avoid surprise at trial, and to protect against double jeopardy." Abreu, 952 F.2d at 1469. The motion is unfounded and should be denied.

        Respectfully Submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:  /s PETER K. LEVITT
     PETER K. LEVITT
     Assistant U.S. Attorney
     617-748-3355

Date: August 28, 2006