```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )
                              )     Cr. No. 03-10220 MEL
     v.                       )
                              )
1.   SEAN BUCCI,              )
3.   DARREN MARTIN, and       )
4.   CATHERINE BUCCI,         )
        Defendants.           )
```

**GOVERNMENT'S MOTION *IN LIMINE*
TO PRECLUDE INTRODUCTION OF
<u>CERTAIN DOCUMENTS BY CATHERINE BUCCI</u>**

By letter dated January 31, 2007, defendant Catherine Bucci (the "defendant"), noticed the government of her intention to introduce the following two documents at trial: (1) a letter, dated April 28, 2004, from defendants' former attorney Joseph Majchzak (the "Majchzak Letter"); and (2) a Marion College Dean's Academic Achievement Award awarded to Catherine Bucci on May 18, 2001 (the "Academic Achievement Award").  Both documents are inadmissible under black letter rules of evidence.  The Majchzak Letter is hearsay and was submitted to the government in connection with plea negotiations.  The Achievement Award is inadmissible character evidence and irrelevant to the issues in the case.  A copy of the Majchzak Letter is attached as Exhibit A.  A copy of the Achievement Award is attached as Exhibit B.

    A.   <u>The Majchzak Letter</u>

The Federal Rules of Evidence define "hearsay" as an out-of-court statement "offered in evidence to prove the truth of the matter asserted."  Fed.R.Evid. 801©.  The Majchzak Letter is

plainly hearsay and inadmissible.

The Majchzak Letter, which was sent to AUSA John Wortmann on April 28, 2004, makes it clear at the outset that it was submitted in connection with trying to resolve the ongoing investigation of Catherine and William Bucci.  It states: "Let me start by again thanking you for the opportunity to pursue alternative avenues of resolution in this matter."  Majchzak Letter.  See Fed.R.Evid. 408 (precluding admission of compromise and offers to compromise).

It then lays out the Bucci's defense.  For example, the letter contends that the material misstatements of their respective incomes on the mortgage application for the purchase of 23 Marshall Street was the fault of the real estate broker.  The letter states: "It was also this broker who filled out the mortgage application in question, the Bucci's recall that he quickly pushed it across the desk and told them to simply sign and date it.  In hindsight, they regret not checking it over for any inaccuracies.  But like so many, they relied upon the advice and counsel of a professional."

As the Court is aware, a significant aspect of the government's case against Catherine Bucci -- particularly as it tends to show her knowledge -- is the material misstatements she and her husband made on the mortgage application for 23 Marshall Street, which the government contends Sean Bucci purchased with

drug money and put in his parent's name to conceal the illegal source of his money.  The Indictment alleges:

> On or about May 30, 1998, defendant **Catherine M. Bucci** made material false statements on a mortgage application for a loan in the amount of $229,600.00 from a domestic financial institution in order to acquire the Marshall Street Property, including:
>
> a.   Falsely stating that the Marshall Street Property would be used as the primary residence of defendant **Catherine M. Bucci**;
>
> b.   Falsely stating that 4 Loris Road, Danvers, Massachusetts, (the actual primary residence of defendant **Catherine M. Bucci**) would be used as rental property, providing additional income needed to qualify for the loan;
>
> c.   <u>Falsely stating that **Catherine M. Bucci** was employed by defendant **Sean Bucci**'s disc jocky business, 911 Productions, earning $20,000 per year as a bookkeeper</u>;
>
> d.   <u>Falsely stating that **Catherine M. Bucci** had been so employed for a period of four (4) years</u>;
>
> e.   <u>Falsely stating that her husband earned $57,600 per year as a manager at Simpson's Package Store, Beverly, Massachusetts</u>;
>
> f.   Falsely stating that **Catherine M. Bucci** had $60,000 cash savings in a safe deposit box, which would be used for the down payment on the loan needed to purchase the Marshall Street Property; and
>
> g.   Falsely listing the $10,000 illegal cash drug proceeds, which **Sean Bucci** paid to auctioneer W. Todd Finn on May 29, 1998, as an asset of **Catherine Bucci**.

Indictment ¶ 19 (emphasis added).

In fact, the evidence will show that Catherine Bucci never worked for 911 Productions, was always listed as a housewife on

3

her joint income taxes with William Bucci, and never reported any income whatsoever on her taxes. The payroll records for William Bucci from Simpson's Liquors will show that he never made more than $25,000 during this period, not $57,600. [The Bucci's thus not only made up income when there was none (911 Productions) but exaggerated their total income by $52,000 per year. That is, their actual income per year was no more than $25,000, and they put on the mortgage application that their joint annual income was $77,600.]

It was through these material misstatements that the Bucci's sought to solve their problem. Sean Bucci was buying the e 23 Marshall Street house and wanted his parents to act as straw purchases because he had no legitimate source of income. But Catherine and William did not have enough legitimate themselves to qualify for the mortgage either. So they lied on the mortgage application to hide the fact that the payments were coming from Sean Bucci's drug money. [If, of course, they were really buying the house with an 18-year old inheritance, why make such blatant lies about their incomes?]

So the statements in the Majchzak Letter are (or were) their defense *du jour* -- it's the real estate broker's fault. The real estate broker made up income for Catherine Bucci -- apparently pulling the name "911 Productions" out of a hat (since Catherine Bucci apparently had nothing to do with the information in the

4

mortgage application), which just so happens to be the DJ business her son Sean operates, and also decided, *sua sponte*, to more than double William Bucci's income. Thus, the Bucci's were innocent victim's of the diabolical real estate broker -- "In hindsight, they regret not checking it over for any inaccuracies. But like so many, they relied upon the advice and guidance of a professional."[1]

The fact that the defense in the Majchzak Letter is patently absurd does not make it any less hearsay. The statements in the Majchzak Letter about what happened when the Bucci filled out the mortgage application purport to have been provided to the lawyer by the Buccis. Thus, admission of the letter is tantamount to admission of their statements. If the defendants want to assert this defense, however, William Bucci or Catherine Bucci need to take the stand and testify. If they want to assert the same lies contained in the Majchzak Letter, they are free to do so, subject to cross-examination and the law of perjury. But they cannot have it both ways -- assert the defense contained in the Majchzak Letter without subjecting themselves to cross-examination and the attendant risk.

Ironically, Catherine Bucci's new lawyer has apparently himself recognized the implausibility of the defense asserted in

---

[1] The real estate broker will testify that the Bucci's provided him with the information about their income that he then put on the mortgage application.

5

the Majchzak Letter because he has asserted a contradictory defense.  By letter dated January 17, 2007, Attorney Sinsheimer advised the government that Catherine Bucci would be relying on the William Bucci did it but meant no harm defense (as opposed to the real estate broker did it defense).  Specifically, in the January 17, 2007 letter, Attorney Sinsheimer stated: "[Mr. Bucci] will acknowledge that *he exaggerated their earnings* to obtain the loan [for 23 Marshall Street], but that *they* always fully intended to repay it, and he had no idea this could be considered a serious matter."  (Emphasis added.)

The Majchzak Letter is plain hearsay and has no place in this trial.  It is designed to "float" a possible defense for Catherine Bucci without having to put anybody on the stand.  The only way that the Majchzak Letter could come in at trial would be as impeachment of either Catherine Bucci or William Bucci if they testify inconsistent with its contents.  See, e.g., Mello v. K-Mart Corp, 792 F.2d 1228 (1st Cir. 1986) (lawyer's letter admissible for impeachment purposes over hearsay objections because "[a] party is bound by representations his lawyer makes").

B.   <u>The Achievement Award</u>

The Achievement Award is obviously irrelevant to the issues in this case and constitutes impermissible character evidence. <u>See</u> Fed.R.Evid. 404; 401.

## CONCLUSION

For the foregoing reasons, the government requests that its motions *in limine* be allowed.

Respectfully submitted,

MICHAEL J. SULLIVAN

United States Attorney

By:  /s PETER K. LEVITT
     PETER K. LEVITT
     Assistant U.S. Attorney
     JOHN P. MCADAMS
     Trial Attorney, DOJ
     One Courthouse Way
     Boston, MA 02210
     (617)748-3100

Dated: February 2, 2007

APR 28 2004 2:39PM    HP LASERJET 3200                                                    p.2

# PRICE & MAJCHRZAK
### ATTORNEYS AT LAW
350 BROADWAY
CHELSEA, MA 02150

TEL 617 884 7500
FAX 617 884 1233

April 28, 2004

<u>VIA FACSIMILE & U.S. MAIL</u>

John A. Wortmann, Esq.
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210

Re:    <u>William and Catherine Bucci</u>

Dear John:

    Let me start by again thanking you for the opportunity to pursue alternative avenues of resolution in this matter. As I related to you the other day, it is my client's genuine desire to fully cooperate, but if that means they must admit to crimes that they do not feel they committed, they cannot. As of this writing, their position is unchanged. Mr. and Mrs. Bucci continue to vehemently deny *any* knowledge of Sean's alleged illegal activities and offer the following in response to the allegations raised in our recent meeting. Hopefully, it will be of some insight to you.

    In 1981 Mr. and Mrs. Bucci inherited approximately $80,000.00 in cash from a trust established by Mr. Bucci's uncle, Pasquale J. Landolphi. A copy of this trust as well as the First & Final Accounting of the estate from Essex Probate Court is enclosed herewith for your review. Mr. Bucci ultimately chose to hold these funds at home in a fireproof home safe, which he continues to use.

    Upon their decision to purchase the home in North Reading, Mr. and Mrs. Bucci engaged a mortgage broker. When they informed him of their desire to use the cash as their down payment, it was he who instructed them to first deposit it into a safe deposit box and then photograph it. Likewise, it was on his instruction that they made the 3 additional deposits and withdrawals in June of 1998 that your agent referenced. The broker informed them that they needed to follow these instructions in order to present a "clean package" that would "satisfy" the mortgage underwriters. It was also this broker who filled out the mortgage application in question. The Bucci's recall that he quickly pushed it across the desk and told them to simply sign and date it. In hindsight, they regret not checking it over for any inaccuracies. But like so many, they relied upon the advice and guidance of a professional.

APR 28 2004 2:39PM   HP LASERJET 3200

p.3

When they later agreed to let Sean rent the house from them, it was their knowledge and belief that his income was derived solely from his DJ business and the rents he collected from his roommates. When Sean later offered to take responsibility for the care and maintenance of the house, it was agreed that he would have access to his mother's new checking account which she had opened in order to keep her financial records for that property separate. And as you are well aware, this was a trust that it appears Sean abused. At all times, Sean personally had complete custody and control of this account including all the checks and monthly statements. Mrs. Bucci never had any reason to know that the account was being misused. In fact, it now appears that Sean's questionable use of the account did nothing to aid in any "laundering" of his monies. Rather, it seems that it simply made his cash transactions fully known to the world and created a paper trail.

As far as the Bucci's 1998 tax return is concerned, they have already filed an amended return with the proper number of exemptions.

As I'm sure you are aware, Sean's arrest has been extremely painful and stressful on his parents. And the fact that they are now part of this investigation only compounds things. From what I know, it appears that Sean was the target of a long and successful drug investigation. As a result, Sean and his associates are now in custody and/or facing lengthy prison sentences. I have no information, or reason to believe, that his parents were also targets of this investigation. Therefore, Mr. and Mrs. Bucci may be guilty of some poor judgment and decision making over the past few years, but they are not guilty of or part of any family drug dealing conspiracy. Hopefully, after reviewing all the facts in this matter, you will make this same determination and do the fair and just thing. As professionals, we both know that justice has already been served in this matter.

Thank you for your continued attention.

Sincerely,

Joseph M. Majchrzak

JMM/hh
file

2571

# MARIAN COURT COLLEGE
*Swampscott, Massachusetts*

## Dean's Academic Achievement Award

has been awarded to

*Catherine Bucci*

_Laurie White_
Academic Dean

_Joanne Biteau, RSM_
President
May 18, 2001